IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARRINGTON KEYS, | : | CIVIL ACTION NO. **3:CV-04-0823** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| CO KRAMER, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Carrington Keys, an inmate formerly incarcerated at the State Correctional

Institution at Mahanoy ("SCI-Mahanoy"), originally filed this 42 U.S.C. § 1983 civil rights action on

April 15, 2004. (Doc. 1).[1]  Plaintiff filed an Amended Complaint on May 19, 2004.  (Doc. 20).[2]

---

1. In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two
essential elements in order to state a claim:  (1) that the conduct complained of was committed
by a person acting under color of state law; and (2) that the conduct complained of deprived
the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the
United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981);  Further, Section 1983 is not a source of
substantive rights.  Rather, it is a means to redress violations of federal law by state actors.
*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County
Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).
        Here, there is no dispute that Defendant Kramer, as a Corrections Officer ("CO") at SCI-
Mahanoy, is a state actor.

2. Plaintiff was formerly incarcerated at SCI-Mahanoy and was temporarily transferred to SCI-
Camp Hill (April 21, 2004) after he filed this, his first, §1983 action with this Court.  (Civil No.
04-0823, M.D. Pa.).  Plaintiff returned to SCI-Mahanoy on May 5, 2004.  Plaintiff was later
transferred to SCI-Camp Hill, his current place of confinement.  In the present case, Case
Number 04-0823, Defendant Kramer's Summary Judgment Motion is ripe for disposition.
        Plaintiff also filed a second civil rights action in May 2004, Civil No. 04-1004, M.D. Pa.,
which was dismissed by this Court on April 8, 2005.

Pursuant to the Prison Litigation Reform Act of 1995,[3] (the "PLRA"), we conducted a preliminary screening of Plaintiff's Amended Complaint. *See* 28 U.S.C. § 1915.   We found that the Plaintiff's Amended Complaint should be dismissed as to three (3) Defendants and that he should be directed to file a second Amended Complaint. (Doc. 25).   Consequently, on June 10, 2004, the Plaintiff filed a second Amended Complaint. (Doc. 33).   On July 1, 2004, we screened the Plaintiff's Second Amended Complaint and found that it should proceed only as against Defendants Kramer and Campbell.   (Doc. 41).   The District Court adopted our Report and Recommendation.   (Doc. 45).   The Second Amended Complaint was served on remaining Defendants.   (Doc. 46).

The second amended pleading was allowed to proceed with respect to Plaintiff's claim that Defendant Kramer assaulted him on February 2, 2004, and Plaintiff's retaliation claim that Defendant Kramer issued a false misconduct against him to make it look as though Plaintiff was the aggressor in the incident, and not Defendant Kramer. The Plaintiff's Eighth Amendment claim that Defendant Campbell was present during the assault by Kramer and did not intervene to stop it was also allowed to proceed.   (Doc. 41).

―――――――――――――

Recently, Plaintiff filed an action styled as a habeas petition, in which he sought release from the Special Management Unit ("SMU") at SCI-Camp Hill.  Civil No. 06-0260, M.D. Pa. This Court construed Plaintiff's 06-0260 case as a civil rights suit, and dismissed this action as well.   Plaintiff then filed another § 1983 action again alleging that CO Kramer, our remaining Defendant in the instant case, retaliated against him due to his grievances and complaints against prison staff while he was confined at SCI-Mahanoy.  Civil No. 06-0479, M.D. Pa.  We have recently screened Plaintiff's latest action (No. 06-0479) and issued a Report and Recommendation.

3.  Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

On October 12, 2004, both of the remaining Defendants filed a Motion to Dismiss the Second Amended Complaint. (Doc. 80). The Defendants' Motion was briefed by the parties. (Docs. 81, 82 & 94). On January 18, 2005, we issued a Report and Recommendation and recommended as follows: that Defendants' joint Motion to Dismiss (Doc. 80) be considered as a Summary Judgment Motion, and that it be denied with respect to the Plaintiff's claim that Defendant Kramer retaliated against him by filing a false misconduct report; that Defendants' Motion be granted with respect to Plaintiff's Eighth Amendment claims that Defendant Kramer assaulted him on February 2, 2004, and that Defendant Campbell failed to intervene to stop the assault; and that this case be remanded to the undersigned for further proceedings with respect to only the retaliatory false misconduct claim against Defendant Kramer. (Doc. 103). On March 30, 2005, the District Court adopted our Report and Recommendation and remanded this case to the undersigned. (Doc. 111).[4]

Defendant Kramer filed an Answer to the Second Amended Complaint. (Doc. 113). Discovery then ensued with respect to Plaintiff's remaining retaliation claim against Defendant Kramer. The discovery period has now expired, and the sole remaining Defendant, CO Kramer, filed a Motion for Summary Judgment on December 21, 2005. **(Doc. 181)**. Defendant also simultaneously filed his support Brief, as well as his Statement of Material Facts ("SMF") and

---

4. Since the District Court adopted our January 18, 2005 Report and Recommendation, Plaintiff was permitted to proceed only with respect to his retaliatory false misconduct claim against Defendant Kramer. Our prior Order granting the Defendants' Motion for Protective Order (Doc. 101) was then lifted after remand of this case so that Defendant Kramer could respond to Plaintiff's Second Amended Complaint and to Plaintiff's discovery requests relevant to the remaining claim.

Exhibits. (Docs. 182 & 183).[5]  After we gave Plaintiff an extension of time, he filed his opposition Brief to Defendant's Summary Judgment Motion on March 8, 2006 (Docs. 192 & 193).  Plaintiff attached Exhibits (A-G) to his brief.  Thus, both parties have had an opportunity to submit pertinent material outside the pleadings.   Defendant's Summary Judgment Motion is now ripe for disposition.[6]

Initially, we find that Plaintiff has failed to respond to each numbered paragraph of Defendant's SMF as required by Local Rule 56.1, M.D. Pa.  Each of Defendant's numbered paragraphs in his SMF is supported by evidence in the record.  Doc. 183, Ex. A.  Plaintiff has had ample opportunity to respond to Defendant's SMF, and he has failed to do so.  As noted, Plaintiff is a seasoned litigator in this Court.  We thus shall deem Plaintiff as admitting to each and every one of Defendant's paragraphs in his SMF.

## II. Allegations of the Second Amended Complaint.

As we previously discussed in our January 18, 2005 Report and Recommendation (Doc. 103), Plaintiff's claims in his second amended pleading against Corrections Officer ("CO") Kramer, a  prison official at SCI-Mahanoy, are as follows:[7]

---

5.  Defendant's SMF is marked as Ex. A, Doc. 183.

6.  The undersigned was assigned this case for pre-trial matters.  28 U.S.C. § 636(b).

7.  We limit our discussion to Plaintiff's allegations and the facts pertinent to Plaintiff's remaining retaliation claim against Defendant Kramer.

4

Plaintiff alleges that Defendant Kramer assaulted him on February 2, 2004, and then retaliated against him to cover up the assault by issuing a false assault misconduct report to make it appear as though Plaintiff was the aggressor, and not the Defendant.  Specifically, the Plaintiff alleges that "CO Kramer retaliated against me with a write up (misconduct report) which stated that I assaulted him with my hands cuffed behind my back.  CO Kramers (sic) acts of violence and retaliation toward me was (sic) motivated by complaints I have filed against his fellow officers in the R.H.U." (Doc. 33, ¶ 6.).  As Defendant summarizes in ¶ 13. of his SMF (Doc. 183, Ex. A), Plaintiff "claims that Defendant Kramer retaliated against him by filing a false misconduct to cover up the fact that Kramer was the aggressor in a February 2, 2004 incident."  Thus, Plaintiff claims that Defendant Kramer issued a false misconduct report against him because he [Plaintiff] had reported that Kramer assaulted him.  (*Id.*, ¶ 14.).  Further, it is undisputed that Plaintiff was found guilty of assaulting Defendant Kramer on February 2, 2004. (Doc. 183, Ex. E).

## III.  Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## IV. Discussion.

As mentioned, Defendant has filed his Statement of Undisputed Material Facts ("SMF") in support of his Summary Judgment Motion as required. (Doc. 183, Ex. A). *See* Local Rule 56.1, M.D. Pa. Plaintiff has not responded to Defendant's SMF. Thus, pursuant to Local Rule 56.1, we shall deem Defendant's entire SMF as admitted by Plaintiff since the facts stated therein are not controverted by Plaintiff. We shall not reiterate Defendant's SMF, and we incorporate the facts contained in it herein by reference. (Doc. 183, Ex. A).[8] Importantly, we adopt ¶'s 21.-

---

8. Since the material undisputed facts contained in the Defendant's SMF (Doc. 183, Ex. A) are supported by citation to evidence, and the Plaintiff has failed to respond to them, we shall adopt them as our own. Further, to the extent Plaintiff has submitted evidence in opposition to

26., & 30. of Defendant's SMF.  (*Id.*, pp. 5-6).  We find these facts in the stated paragraphs to be of particular significance with respect to Plaintiff's remaining retaliation claim against Defendant Kramer.  We do not, however, adopt Defendant's legal conclusions contained in his SMF.  *See e.g.* ¶'s 15., 16., 18., 19. & 31.

Thus, we find that Plaintiff has failed to properly respond to Defendant's SMF as required by Local Rule 56.1 of M.D. Pa.  (Doc. 193).  Defendant has cited to evidentiary support for each of his factual paragraphs contained in his SMF as required.  (Doc. 183, Ex. A).  Therefore, we accept the facts contained in Defendant's SMF as uncontroverted, and we incorporate them entirely herein by reference.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5  (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).  As in the *Paranich* case, our Plaintiff did  not respond to Defendant's  SMF as required by L.R. 56.1, and we also adopt all of facts in Defendant's SMF since they are not controverted by Plaintiff in a response with citation to the record.[9]

Defendant argues in his Motion for Summary Judgment that there is no evidence which establishes a cognizable retaliation claim in this case.  (Doc. 182, p. 4).  Defendant has submitted Exhibits supporting his Motion, as well as a Statement of Material Facts.  (Doc. 183, Ex. A).  Defendant states that Plaintiff has failed to show that he was engaged in a Constitutionally protected

---

Defendant's Summary Judgment Motion, Doc. 193, Exs. A-G, we shall consider it.  However, we accept all of Defendant's SMF's supported by evidence, since Plaintiff has failed to controvert them in a response to Defendant's SMF.  *See* Local Rule 56.1, M.D. Pa.

9. *See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

activity.  Plaintiff's claim, as stated, is simply that Defendant Kramer wrote a false misconduct report against him in retaliation for his reporting that Kramer had assaulted him on February 2, 2004. Defendant also states that Plaintiff has failed to show that he suffered an adverse action sufficient to deter a person of ordinary firmness from engaging in Constitutionally protected activity. Defendant contends that Plaintiff has only proven that he was issued a misconduct report on February 2, 2004 by Defendant Kramer charging him with assault and refusing to obey an order. (Doc. 183, Ex. D).  Defendant states that at the time this misconduct report was issued, Plaintiff was already confined to the RHU as a result of previously imposed disciplinary sanction.  Defendant also points to the fact that Plaintiff cannot show that he has been deterred from filing grievances or civil actions against any prison staff about what he feels amounts to poor treatment, since he has filed grievances after the alleged false misconduct report issued by Kramer, and he has filed several court actions, of which we take judicial notice as noted above.  Indeed, Plaintiff's most recent Civil Action, No. 06-479, M.D. Pa., alleges other acts of retaliation against him by Defendant Kramer while he was at SCI-Mahanoy.  Finally, Defendant argues that Plaintiff has not shown a causal connection between the alleged retaliation, *i.e.* the February 2, 2004 misconduct report, and a protected liberty interest.  Defendant states that since another prison staff member witnessed Plaintiff's improper conduct on February 2, 2004, and since the Hearing Examiner ("HE") found Plaintiff guilty on the charges contained in Kramer's February 2, 2004 misconduct report, that Plaintiff would have been charged with a misconduct report even if Kramer was not involved in the incident.  Thus, Defendant asserts that Plaintiff's complaint that Defendant assaulted him [Plaintiff] was not a substantial or motivating factor in the misconduct report Defendant issued against

Plaintiff.

As discussed below, we find merit to Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56.

### A. Retaliation Claim

In his present Brief, Plaintiff states that on February 2, 2004, Defendant Kramer assaulted him while he was confined in the RHU at SCI-Mahanoy.  (Doc. 193, p. 1).  Plaintiff states that after he was assaulted by Defendant Kramer, he reported the incident to the lieutenant in charge of the RHU and to a nurse in the medical staff.  Plaintiff claims that after he reported this assault on him by Kramer, Kramer wrote a "bogus misconduct report against Plaintiff ...   To punish the Plaintiff in revenge for exercising his right to report violations of his constitutional rights without suffering adverse action." (Id.).[10]  Thus, Plaintiff claims that after he reported Kramer assaulted him on February 2, 2004, Kramer issued a false misconduct report against him charging him with assaulting Kramer in an attempt to cover up the fact that it was Kramer who was the real aggressor.  As mentioned, Plaintiff has submitted evidence attached to his Brief. (Doc. 193).

We find the two Affidavits which Plaintiff has submitted, Affidavits of inmate Ray and of inmate Griffin, Exs. A & B, Doc. 193, to be of no support to Plaintiff's retaliation claim at issue in our case, since neither inmate witnessed the assault incident of February 2, 2004.  Nor do these

---

10. While Plaintiff did not include his own affidavit in support of his version of the facts in this case, he did attach a copy of his version of the February 2, 2004 incident which was taken in response to Kramer's misconduct report issued against Plaintiff, *i.e.* # 731779.  (Doc. 193, Ex. C).  Further, Defendant has produced a copy of Plaintiff's deposition transcript taken in this case on June 30, 2005. (Doc. 183, Ex. F).

inmates aver that they personally knew that Kramer had a habit of issuing false misconduct reports against inmates who complained about him.  Further, upon review of Plaintiff's evidence, Plaintiff indicated, in his version of the February 2, 2004 incident with Kramer, that after Kramer struck him on the side of the head, he went to the nurse at 10:00 and told her what happened.  Plaintiff then stated that two (2) hours later, he received a misconduct report issued by Kramer charging that he assaulted Kramer.  (Doc. 193, Ex. C).  Conspicuously missing from Plaintiff's instant evidence is a report from the prison medical department which shows that Plaintiff did in fact receive treatment to his head on February 2, 2004, and that he told the nurse that Kramer had struck him.  In his version of the incident, Plaintiff also stated that Kramer struck him while CO Campbell had his back turned to them, but indicted that "I have several witnesses that seen CO Kramer assault me." (*Id*.).  Yet, also conspicuously missing from Plaintiff's present evidence is any affidavit from one of these several witnesses who supposedly saw Kramer assault him.  As stated, neither inmate Ray nor inmate Griffin aver that they witnessed Kramer hit Plaintiff on February 4, 2004. (Doc. 193, Exs. A and B).

Additionally, Plaintiff does not offer any evidence as to his claim that he reported to the RHU lieutenant or the nurse that Kramer had assaulted him on February 2, 2004, prior to the time that Kramer issued the misconduct report against him.[11]

At his deposition (Doc. 183, Ex. F, pp. 18-22),Plaintiff testified that on February 2, 2004, while Defendant Kramer and CO Campbell were escorting him from the prison exercise yard back

---

11. As noted, Defendant has attached a copy of Plaintiff's deposition transcript to his exhibits, Doc. 183, Ex. F.

to the RHU, as Campbell was closing the cage to the exercise area, Kramer hit him on the right side of his head.  Plaintiff stated that he fell down to the ground, and then Kramer closed his [Plaintiff's] legs into the wall with the front of his [Plaintiff's] body and all of his legs hitting the wall.  Plaintiff stated that the prison officers had to pick him up from the ground.  Plaintiff then stated that he was taken back to his cell in the RHU by Lt. Kirshner and CO Parker.  Plaintiff stated that Lt. Kirshner and CO Parker took him to medical.  Plaintiff then stated that he reported what happened to him to a nurse, *i.e.* he "asserted that CO Kramer assaulted me .. " (*Id.*, p. 22). Plaintiff could not recall the nurse's name, and stated that a few hours after he reported the assault by Kramer, he received a misconduct which charged that he [Plaintiff] had assaulted Kramer on February 2, 2004.  (*Id.*). Plaintiff stated that "I believe that [Kramer's misconduct report # 731779] was issued on retaliation for reporting what happened." (*Id.*).  Plaintiff stated that he hoped for money damages as a result of his present retaliation lawsuit.  (*Id.*, p. 23). Plaintiff stated that Defendant Kramer issued the false misconduct report against him on February 2, 2004, because he reported the fact that Kramer assaulted him.  (*Id.*, p. 24).  There is no evidence that Plaintiff flied a grievance against Defendant Kramer on February 2, 2004, prior to the issuance of Defendant's misconduct report.  Rather, Plaintiff claims that Kramer was retaliating against him due to his oral reporting of Kramer's unprovoked assault on him as he was being escorted from the exercise yard back to his RHU cell. Plaintiff testified that he guessed that Kramer assaulted him on February 2, 2004, because he [Plaintiff] had filed grievances against other CO's in the RHU, and that this was how the CO's found a way to get back at him.   (*Id.*, p. 28).  Plaintiff did not testify as to any motive that was personal to Defendant Kramer.

11

The undisputed evidence reveals that on February 4, 2004, Plaintiff received a hearing before a Hearing Examiner with respect to Defendant Kramer's February 2, 2004 misconduct report # 731779 issued against Plaintiff, and that the HE considered Plaintiff's account of the incident. The HE found Plaintiff guilty of both charges contained in Kramer's misconduct report, including the charge that Plaintiff assaulted Kramer on February 2, 2004. (*Id.*, Ex. E & Ex. F, p. 34). Plaintiff was sanctioned 90 days disciplinary time as a result. As indicated, Plaintiff was already confined to the RHU at the time of his disciplinary hearing on Kramer's misconduct report. Since Plaintiff was convicted, a § 1983 claim challenging his conviction may be *Heck* barred.[12]

Also, there is no dispute that after the February 2, 2004 incident, and his guilty finding, Plaintiff has continued to file grievances with the prison to report perceived poor treatment, and he has filed lawsuits with this Court, including new lawsuits against CO Kramer.

Both parties agree on the correct elements necessary to prove a retaliation claim. (Doc. 182, 4 & Doc. 193, p. 2).[13]

---

12. To the extent Plaintiff seeks to overturn the hearing examiner's guilty finding and sanctions, Plaintiff would first have to challenge his disciplinary conviction *via* a habeas corpus petition. Plaintiff must first successfully challenge his guilty finding for the assault in question *via* a § 2254 habeas petition. Thus, a § 1983 claim attacking the disciplinary conviction may be barred by *Heck*. As the Third Circuit recently stated, "[u]nder *Heck*, a § 1983 action that impugns the validity of the Plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, C.A. No. 04-2542, (3d Cir. 10-25-05), slip op. 21. 427 F.3d 197 (3d Cir. 2005).

13. Defendant does not contend that Plaintiff failed to administratively exhaust his retaliation claim. Since Defendant has not raised the Plaintiff's failure to exhaust, we shall not consider this issue. Defendants must plead and prove the exhaustion issue as an affirmative defense in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).

In the prior Motion to Dismiss filed by both Defendant Kramer and former Defendant Campbell, they argued that Plaintiff has failed to exhaust his administrative remedies in full as to

1.  *Plaintiff not engaged in Constitutionally protected conduct*

As indicated, Defendant's first argument is that Plaintiff has not shown he was engaged in a Constitutionally protected activity.  We agree with Defendant that the filing of an alleged false misconduct report against an inmate does not amount to a deprivation of a Constitutional right. As the Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.), stated:

> As an initial matter, the filing of a false or unfounded
> misconduct charge against an inmate does not constitute
> a deprivation of a constitutional right.  *See Freeman v. Rideout*,
> 808 F.2d 949 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,
> 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Flanagan v. Shively*,
> 783 F.Supp. 922, 931-32 (M.D. Pa.), *aff'd* 980 F.2d 722
> (3d Cir. 1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95,
> 126 L.Ed.2d 62 (1993).  There is also no constitutional
> right to require prison officials to investigate an inmate's
> grievances.  *Davage v. United States*, No. Civ. A. 97-1002,
> 1997 U.S. Dist. LEXIS 4844, at * 9 (E.D. Pa. Apr. 11, 1997);
> *see also Robinson v. Love*, 155 F.R.D. 535, 5365 n. 3
> (E.D. Pa. 1994) (citing cases).

We thus find that Plaintiff has not established the first element of a retaliation claim, since he has not shown that he was engaged in Constitutionally protected conduct.

We also find that Plaintiff has not shown he suffered an adverse action that was sufficient to deter a person of ordinary firmness from engaging in Constitutionally protected activity. We state again that at the time Plaintiff was found guilty of Kramer's misconduct report, Plaintiff was already confined in the RHU.  Also, as stated, it is undisputed that after the issuance of the

---

all of his present claims because he did not exhaust his final appeal regarding the alleged assault of Defendant Kramer on February 2, 2004, and misconduct report.  However, we found that Plaintiff's retaliatory misconduct report claim against Defendant Kramer was exhausted. (Doc. 103).

misconduct report by Kramer, and after Plaintiff's guilty finding, Plaintiff continued to file grievances against prison staff with the prison, and he continued (up to the present time) to file civil rights actions with this Court. In fact, Plaintiff can hardly claim that he was deterred from filing any court action against Kramer since he has recently filed a civil rights action against Kramer with this Court, Civil Action Number 06-479. We also agree with Defendant that Plaintiff was found guilty of the February 2, 2004 assault, and Plaintiff does not claim that the HE was biased or that he was denied any of his due process rights. (Doc. 182, p. 7).

Defendant also advances the argument in support of his Summary Judgment Motion, that Plaintiff has not shown that the February 2, 2004 misconduct report issued against Plaintiff was substantially motivated by Plaintiff's report to the nurse and the RHU lieutenant that Kramer assaulted him. We agree, and note that Plaintiff has not offered any evidence that Defendant was ever aware that Plaintiff reported he was assaulted by Defendant at the time Defendant issued the misconduct report against Plaintiff.

Defendant points to the fact that CO Campbell also witnessed the incident with Plaintiff on February 2, 2004, and that even if Kramer did not issue the misconduct report against him, Campbell would have. Defendant also states that the HE then found Plaintiff guilty of assaulting him. Thus, Defendant contends that there is no causal connection shown between the retaliation alleged by Plaintiff and Defendant's issuance of the misconduct report. (Doc. 182, pp. 8-9 & Doc. 183, Ex. D & Ex. A, ¶ 22. ).

Defendant basically argues that he issued the misconduct against Plaintiff on February 2, 2004 for observed misconduct of the Plaintiff, and not as retaliation for Plaintiff's exercising a

constitutionally protected activity.  We concur, and we also find that Plaintiff has not met the standard for a retaliation claim because he has not shown that Defendant was aware, at the time he [Defendant] issued the misconduct, that Plaintiff had reported Defendant for assaulting him.

Plaintiff offers no evidence that Kramer knew of his (Plaintiff's) oral assault complaint prior to Kramer's issuance of the misconduct report against Plaintiff.  Therefore, Defendant could not have acted in retaliation to something there is no evidence he had prior knowledge of.

We find no evidence controverting Defendant's evidence.  We do not find Plaintiff's deposition testimony, in which he stated that he was retaliated against by Defendant Kramer on February 2, 2004 by the filing of a misconduct report after Plaintiff reported that Kramer had assaulted him, to be supported by evidence.  Plaintiff did not testify that Kramer's motivation in assaulting him was personal to Defendant, but rather, he guessed that Kramer was retaliating on behalf of unnamed CO's in the RHU against whom Plaintiff had previously filed grievances.  Plaintiff did not state that he had previously filed a grievance against Kramer.  Plaintiff offered no proof of such a theory to show that this was the motive behind Kramer's alleged assault on him.

Plaintiff does not demonstrate through any evidence as to how and when Defendant became aware of his [Plaintiff's] alleged oral report of Defendant's assault.  Plaintiff does not submit any proof that he filed a grievance against Kramer on February 2, 2004 for assault.  Nor does Plaintiff sufficiently prove that Defendant was aware that he reported an assault on him by Defendant before Defendant issued the February 2, 2004 misconduct report.  Even if Plaintiff did verbally inform Lt. Kirshner and the nurse that he was assaulted by Kramer, as mentioned above, Defendant has shown that his misconduct report was based on Plaintiff's conduct verified by CO

15

Campbell, and that Plaintiff was found guilty of the assault by an independent HE.  Even if Plaintiff did verbally complain that Kramer assaulted him, Plaintiff has also failed to show that Kramer was aware of the complaint prior to issuing the misconduct report against Plaintiff, and that Plaintiff's complaint was a substantial factor in the issuance of the misconduct report.

In *Rauser v. Horn,* 241 F.3d 330 (3d Cir. 2001), the Court established an analysis in evaluating a retaliation claim.  "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."  *Id*. at 333.  Then, an inmate must establish that he suffered adverse action at the hands of the prison officials.  *Id.*  Finally, a casual connection must be made between the adverse action and the Constitutional right.  *Id.*  Defendant argues that Plaintiff has not shown that he was engaged in a Constitutionally protected right, and that there is no causal link between any protected activity and the alleged retaliatory action since CO Campbell also witnessed Plaintiff's misconduct , and the HE found him guilty.  Thus, Defendant asserts that even if he did not issue the misconduct report, Plaintiff would still have had the same outcome.

We agree with Defendant.  First, as discussed, we have found that Plaintiff has not shown that he was engaged in a Constitutionally protected activity.  Defendant cites to *Smith v. Mensinger*, 293 F. 3d 641, 652 (3d Cir. 2002) (Doc. 182, p. 5), in which the Plaintiff inmate claimed that Defendant issued a misconduct report to retaliate against Plaintiff for his conduct toward Defendant and to cover up a beating.  The *Smith* Court noted that while Plaintiff "alleges that he was cited in the misconduct reports to cover up the Defendants' own improper conduct, his complaint does not suggest a retaliatory motive that would implicate a Constitutional right such as access to the courts."

16

*Id*. at 654, n. 10. In the present case, Plaintiff claims that Defendant Kramer fabricated the February 2, 2004 misconduct report (#731779) against him to cover up Defendant's assault on him as retaliation for Plaintiff's grievances against other CO's in the RHU. As in the *Smith* case, our Plaintiff does not show a retaliatory motive by Defendant Kramer that implicates a Constitutionally protected right. As discussed, Plaintiff certainly cannot claim that he was denied access to the courts or that he was prevented from filing grievances, since the evidence shows that he has availed himself of such filings both in the prison system and with this Court. Also, as stated, we find the required causal link of a retaliation claim to be lacking, since there is no evidence that Defendant was aware of Plaintiff's oral complaint against him when Defendant issued the February 2, 2004 misconduct report.

Defendant further contends that Plaintiff did not establish the "adverse action" requirement of a retaliation claim. (*Id*., p. 6). The evidence shows that Plaintiff was already confined in the RHU at the time the misconduct report was issued by Defendant, and that Plaintiff was not deterred in anyway from filing grievances against prison staff alleging improper treatment and from filing actions in this Court, including against Defendant Kramer, after Defendant's misconduct report was issued. As Defendant recognizes, to establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and adverse action by the Defendant. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Here, we agree with Defendant that the Plaintiff does not satisfy the causal connection element as to his retaliation claim against Defendant Kramer.

Further, as to the final step of the *Rauser* analysis, as discussed, we have found no evidence presented by Plaintiff that shows Defendant Kramer was aware of any oral assault grievance made by Plaintiff when he (Defendant) issued his misconduct.  Additionally, Plaintiff failed to present any evidence that his alleged oral complaint was a substantial or motivating factor in Defendant's misconduct report issued against Plaintiff.  Therefore, there is not a nexus between the alleged retaliation and the Plaintiff's exercise of a constitutionally protected activity, *i.e.* filing a grievance or access to the courts.

As mentioned, a plaintiff raising a retaliation claim "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." *Graham, supra,* 89 F.3d at 79. (*citing In Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977).).  "[A] Complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone . . ." *Flaherty v. Couglin*, 713 F.2d 10, 13 (2d Cir. 1983).  In his retaliation claim, our Plaintiff has failed to meet his burden of showing that his proffered oral complaint against Defendant Kramer was a substantial or motivating factor in Defendant's issuance of the February 2, 2004 misconduct report against him.  Defendant has established why he filed the misconduct report against Plaintiff.  Plaintiff relies upon only conclusory averments to show a causal connection with respect to Defendant Kramer's alleged retaliatory conduct.  We do not find this sufficient.

Accordingly, we shall recommend that Defendant's Motion for Summary Judgment with respect to Plaintiff's remaining retaliatory false misconduct claim against Defendant Kramer be granted.  **(Doc. 181).**

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Defendant's Motion for Summary Judgment **(Doc. 181)** be granted with respect to Plaintiff's remaining claim that Defendant Kramer retaliated against him by filing a false misconduct report on February 2, 2004. Further, it is recommended that judgment be entered in favor of Defendant Kramer and against Plaintiff.  Finally, it is recommend that this case be closed.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  May 17, 2006**

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARRINGTON KEYS, | : | CIVIL ACTION NO. **3:CV-04-0823** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| CO KRAMER AND CO CAMPBELL, | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 17, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

20

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                  **S/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                                                  **United States Magistrate Judge**


**Dated: May 17, 2006**